CLERY SALAZAR RIVERA ET AL., Plaintiffs and Appellants, v. SECRETARY OF THE TREASURY OF PUERTO RICO, Defendant and Appellee.

No. R-62-236.     Decided November 1, 1963.

*J. M. Toro Nazario* and *José H. Rivera Cintrón* for appellants.
*J. B. Fernández Badillo, Solicitor General,* and *Américo Serra, Assistant Solicitor General,* for appellee.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

MR. JUSTICE HERNÁNDEZ MATOS delivered the opinion of the Court.

According to § 1702 of the Civil Code, the aleatory contract of annuity binds the debtor to pay a pension or annual income to one or more specified persons for life, for a principal in personal or real property, the ownership of which is at once transferred to the debtor charged with the income.

Many writers are of the opinion that life annuity is not properly a contract, although this may be, generally, the manner in which it is constituted, but rather a special

income which may be derived from different sources (will, contract), there being, therefore, legacy of life annuity, life annuity gifts, sales in the form of life annuity in which the income plays the role of price. Colin and Capitant maintain that when it has been constituted without good consideration, it is not an aleatory contract but rather a gift.[1]

When Act No. 303 of April 12, 1946 (Sess. Laws, p. 782) which levied taxes on inheritances and gifts was enacted, the term "gift" was defined, for the purposes of the tax therein levied, as including, in addition to those defined by the Civil Code, some transactions which never theretofore had been considered as such under the civil law, among them, the transfer of property "for less than its fair value, either in money or money's worth, or by exchange," and the so-called gifts made indirectly. The life annuity contract among relatives was not expressly included.

In *Blanco* v. *Registrar*, 70 P.R.R. 16 (1949), we considered the refusal of a registrar to record a conveyance of certain urban property made in 1948 in consideration of the constitution by the transferees of a life annuity of $600 a year on the property in favor of the transferors and during the lives of both. The property was then worth $12,000. The registrar maintained that although the transaction purported to be a life annuity, the same constituted a gift or in any event a transfer for a price less than its fair value, and that according to the Act he could not record it without accrediting the payment of the gift tax levied by Act No. 303 *supra* and the amendments thereto of 1947 and 1948.

We affirmed the ruling appealed from on the ground that the conveyance involved was for less than the fair value which was subject to the payment of the tax levied by that Act because the life annuity of $600 annually was less than the rental value of the properties.

---

[1] See the term "Life Annuity" in Casso and Cervera, *Diccionario de Derecho Privado*.

In search for better luck, subsequent to our opinion of May 24, 1949, the contracting parties executed in the following June a new deed on "Modification of Life Annuity Contract." They ratified therein the terms of the contract already executed, record of which had been refused by the registrar. They repeated that the property was worth $12,000; that it was rented for a monthly net rent of $60; that the constituents of the annuity were daughters of the transferors, and that the former bound themselves to pay to the latter a life annuity of $960 a year during the life of both with retroactive effect to the date of the original contract.

This new deed having been presented in the Registry, record was also denied on the ground that the receipt establishing the payment of the tax had not been presented, since the registrar was of the opinion that it appeared therefrom "more clearly" that the property was being conveyed for less than its fair value, in accordance with Act No. 303 and its amendments of 1947 and 1948 and our previous decision of May 24, 1949. Once again the contracting parties resorted to this Court.

In *Blanco* v. *Registrar*, 70 P.R.R. 557 (1949), we reversed the note refusing to record the modified contract. We said in part as follows:

"In the deed originally executed it was stated that the price of the real property conveyed was $12,000 and that the life annuity that the transferees bound themselves to pay to the transferors was $600 a year. In the explanatory deed the value of the property conveyed continues being the same and the life annuity has been raised to $960 a year. In the light of the context of our original opinion we are now of the opinion that the Registrar should have made the record sought for the reasons which we shall state below:

"The rental value of the property is $75 monthly, which amount, according to the terms of the deed, after several discounts which are mentioned, shows a net monthly income of $60. Since the life annuity to be paid is the annual sum of

$960 equivalent to a monthly rental of $80, it is unquestionable that the same is higher than the rents of the property conveyed. Furthermore, if the value of the house is $12,000 and the rental to be paid is $960 the revenue to be produced by the thing transferred is not less than that authorized by the statute. Cf. Act No. 5 of August 17, 1933, (Spec. Sess. Laws, p. 26)."

In an attempt to fill the normative gap which with respect to indirect gifts made by way of life annuity could exist in Act No. 303 and its amendments, a bill to amend § 1 thereof was introduced in the regular legislative session of 1950 upon recommendation of the then Treasurer of Puerto Rico.[2]

---

[2] An aclaratory memorandum signed by the Treasurer was made part of the record of that bill. It reads as follows:

"Seventeenth Legislature—Second Regular Session—Government of Puerto Rico—Department of the Treasury—Office of the Treasurer—Aclaratory Memorandum on the Bill 'To amend § 1 of Act No. 303, approved April 12, 1946, as subsequently amended, and for other purposes.'

"In the case of *Blanco* v. *Registrar*, 70 P.R.R. 16, it was held that where property is transferred, the transferee binding himself to pay a life income to the transferor which is less than the income which the value of the thing transferred may produce, such transaction constitutes a gift since the property was transferred for less than its fair value.

"On November 28, 1949, in another appeal taken by Blanco from the ruling of the Registrar of Property, the Supreme Court held that if the annuity is equivalent to the income derived from the value of the property transferred, the transaction does not constitute a gift.

"This bill amends § 1 of Act No. 303, approved April 12, 1946, known as Inheritance Act, adding a provision whereby any conveyance of property with the obligation on the part of the recipient to pay the donor any life annuity, even though such life annuity be equivalent to the revenue derived from the value of the property, shall be treated as a gift if the recipient is a relative of the donor within the first degree of consanguinity or second of affinity. The purpose of this amendment is to fill the gap existing at present in the Inheritance Act referred to in the order of the Supreme Court pointed out above.

"The amendment also provides that any conveyance of property subject to usufruct reserve in favor of the donor shall be taxable if the recipient is a relative of the donor.

"Under the law in force at present, in the case of an onerous gift there shall be deducted from the amount of the gift, for the purpose of the tax assessed thereon, the amount of the obligation imposed on the recipient. The amendment proposed does not alter this situation. However, according to that amendment the tax shall be assessed on the total value

382

In the Senate session held March 22, 1950, Senator Ortiz Stella stated the following in its pertinent part, in the course of the consideration in full committee of H.B. 366:

"Mr. President and Colleagues: At the request of colleague Iriarte I am going to give you a brief explanation on the bill.— The bill amends § 1 of Act No. 303, approved April 12, 1946, which is the Inheritance and Gift Tax Act. The amendment appears in italics and the purpose is to prevent tax evasion in conveyances of property for the purpose of preserving a life income from the usufruct of the property.—In a case in San Juan certain property was transferred to the children in exchange for a life annuity.—The deed of assignment or gift or conveyance, or whatever you want to call it, was presented in the Registry of Property and denied because the payment of the gift tax had not been established. The registrar alleged that since the life income which the person who conveyed the property was going to receive was clearly less than the rent which the house would produce, it was a gift, that is, that the persons to whom the property was conveyed would be benefited, and he was of the opinion that it was a gift and refused registration.— Appeal was taken to the Supreme Court and the Supreme Court sustained the registrar.—What happened? A new deed was made in which these persons again conveyed the property, but this time imposing upon the persons to whom the property was conveyed the obligation to pay them by way of life annuity a pension which was higher than that fixed in the deed, which was equal to the rent which that house could have produced.— Again the registrar refused to record and the Supreme Court reversed saying that it was not a gift, since the persons in whose favor the property was assigned did not benefit. The purpose of this amendment to the Act is to prevent that."

The bill finally became Act No. 103 of April 25, 1950 (Sess. Laws, p. 262), amending § 1 of Act No. 303 of 1946.

---

of the properties, in the case of contracts containing life annuity obligations or subject to usufruct reserves, if the donor and the recipient are relatives.

"In other words, all the properties object of the gift shall be taxable in such cases, without the need of deducting the amount of the recipient's obligation.—Respectfully, (s) S. L. Descartes, Treasurer."

Since then that amendment has provided with respect to conveyances of property subject to the payment of life annuity the following:

"Any conveyance of property under the obligation on the part of the recipient to pay the donor any life annuity, even though the same be equivalent to the revenue derived from the value of the property, shall, if the recipient is a relative of the donor in the third degree of consanguinity or second of affinity, also be considered a gift. Any conveyance of property subject to usufruct reserve in favor of the donor shall be considered as a gift if the recipient is a relative of the donor in the third degree of consanguinity or second of affinity.

".     .     .     .     .     .     .

"*Taxable Gift.* The term 'taxable gift' means the amount of any gift minus the exemptions allowed by Section 4 of this Act.

"In the case of an onerous gift there shall be deducted from the amount of the gift, for the purposes of the tax assessed thereon, the amount of the obligation imposed on the recipient; *It being understood,* that in the cases of contracts containing life annuity obligations, or subject to usufruct reserve in favor of the donor, a tax shall be levied, as provided in Section 2 of this Act, on the total value of the property as of the date of contract, if the recipients are relatives of the donor in the third degree of consanguinity or second of affinity."

In the petition under our consideration the following occurred: By public deed executed on January 9, 1960, entitled "Life Annuity," Fernando García Rodríguez transferred to his daughter Luz Edita García Cancel and to her husband Clery Salazar Rivera five urban properties and a rural property situated in the Municipality of Mayagüez, in exchange for the obligation assumed by the Salazar García spouses to pay him a life annuity totalling $4,267 annually, in monthly instalments of $355.58 each, during the transferor's natural life.

The Life Annuity Deed in question having been presented for registration in the Registry of Property, Mayagüez Section, the Registrar refused to record it until the correspond-

ing tax was paid or it was established by the Secretary of the Treasury that the conveyance in question was not subject to the payment of the gift tax.

The Secretary of the Treasury determined that the conveyance made by virtue of the said life annuity contract constitutes a gift under the provisions of § 1(a) of Act No. 303 of April 12, 1946, as amended (13 L.P.R.A. § 881(a)), and proceeded to levy the tax on the total value of the properties at the time of the contract, as provided by § 1(e) of Act No. 303 *supra* of 1946 (13 L.P.R.A. § 881(e)).

The properties object of the transaction were appraised by the Secretary of the Treasury at $69,360, which appellants found agreeable.

The share of each appellant was determined at $34,680 and a tax of $4,620 was imposed on each.

Feeling aggrieved by the determination of the Secretary of the Treasury, appellants appealed to the Superior Court, San Juan Part, which dismissed the complaint by judgment rendered on August 28, 1962.

At the request of plaintiffs we decided to review it. The fundamental question raised by them is whether such transfer of property is subject to the payment of the tax provided by Act No. 303 and its amendments. Naturally, appellants maintain that it should be decided in the negative and respondent officer in the affirmative.[3]

Appellant spouses maintain that their case is not covered by Act No. 303 and its amendments because (a) "the contract involved herein is a contract of purchase and sale, as defined by the Civil Code (31 L.P.R.A. § 3741), since in the same concur 'the delivery of the specified thing and the payment therefor of a certain price in money or in something representing the same,'" and (b) because "if it were

---

[3] Both parties have submitted well-reasoned briefs which reveal a careful and extensive study of the points discussed.

taxable, the rent to be paid for this transaction would have to be at the most equivalent to the income produced by the value of the property."

■ Both contentions are without merit. The contract entered into on January 9, 1960, between Fernando García Rodríguez and Clery Salazar Rivera and his wife is not a sales contract, but the life annuity contract defined in § 1702 of our Civil Code.

■ The sale and the life annuity contracts have in common the fact that they are real, onerous contracts and that they are used as means for conveying definitively the ownership of the properties involved therein. But there are no fundamental concomitances between both contracts which may admit of similarity. The life annuity has, however, great analogies or affinities with other juridical figures such as the contracts of insurance, of mutual loan with interest whenever the property conveyed consists in a capital in cash, of annuity and of allowance for support.[4]

The most obvious proof to show that it is a life annuity contract is the deed itself executed by the parties. The deed is entitled "Life Annuity". In the fifth paragraph it is set forth:

"FIFTH. The parties have agreed to execute a life annuity which they make in compliance with the clauses and stipulations of the present contract."

· In the seventh paragraph they stipulated that "the price or consideration for such alienation is aleatory, wherefore the assignor imposes upon the assignees a life annuity of . . . ."

Regarding the manner of payment, terms and warnings, it is stated in the deed:

---

[4] See XXVIII Scaevola, *Código Civil* 188–93, and the interesting footnote 12 in *Manautou* v. *Sec. of the Treasury*, 87 P.R.R. 174 (1963).

"MODE OF PAYMENT. The assignees agree and bind themselves to pay to the assignor the said income totalling four thousand two hundred sixty-seven dollars annually, in monthly installments of three hundred fifty-five dollars and fifty-eight cents each.

"TERMS. EIGHTH. The said monthly installments shall be paid during the natural life of the assignor commencing on the first day of January nineteen hundred and sixty, to which date this contract shall be retroactive; provided, that the last payment shall cover the full month in which the death may occur.

". . . . . . . .

"WARNINGS. The certifying party gave the executing parties the legal warnings of the case, especially those relative to the nature and extent of the life annuity contract, as required by the Civil Code, the legislation in force and the case law governing in Puerto Rico."

■ As to the second point, appellants insist that if the annual pension is greater than the income produced by the value of the property, the life annuity is not taxable under the law. Again they are not right. The text of subd. (a) of § 1 leaves no room for doubt. It covers and defines gift as *"any conveyance of property* under the obligation on the part of the recipient to pay the donor *any life annuity,"* if the recipient is a relative of the donor in the third degree of consanguinity or second of affinity. The phrase "even though the same be equivalent to the revenue derived from the value of the property"—which undoubtedly was taken from the aclaratory memorandum of the then Treasurer— does not have the effect of creating conditions, exceptions, or limitations to the all-embracing meaning of the phrases "any conveyance of property" and "any life annuity."

We consider appropriate the following paragraphs from appellee's brief on this and other aspects of the appeal:

"From the foregoing it may be inferred that the purpose sought by Act No. 103 of 1950, which amends Act No. 303 of 1946, is to consider as a gift any conveyance of property with

the obligation on the part of the recipient to pay the donor any life annuity, if the recipient is a relative of the donor within the third degree of consanguinity or second of affinity, in which case all the properties object of the gift are taxable without deducting the amount thereof from the donee's obligation.

"If appellants' interpretation should prevail, the purpose of the lawmaker in enacting Act No. 103 of 1950, amending § 1 of Act No. 303 of 1946, would be defeated since it would be sufficient to fix a greater life annuity at any amount, no matter how small, for the income derived from the value of the property in order that the transaction may not constitute a gift under the provisions of the Inheritance Tax Act. Such interpretation is contrary to the legislative intent in amending the Act, since the gap which the Legislative Assembly sought to eliminate from the Inheritance Tax Act would subsist.

"Furthermore, we are of the opinion that the phrase 'even though the same be equivalent to the revenue derived from the value of the property' does not limit nor condition the legislative mandate that any conveyance of property shall be considered as a gift, with the obligation on the part of the recipient to pay the donor any life annuity, if the recipient is a relative of the donor within the third degree of consanguinity or second of affinity. According to the Dictionary of the Spanish Royal Academy, the word *aunque* (even though) is an adversative conjunction which denotes opposition, notwithstanding which something is likely to exist, occur or be done. Hence, we can conclude that the use of the afore-mentioned phrase does not alter the fact that under the provisions of the legal precept to which we have been referring the amount of the life annuity provided in the contract is immaterial.

"Irrespective of all of the foregoing, we must point out the fact that when the case was heard before the Superior Court no evidence was presented to show which was the revenue derived from the properties conveyed. In rendering the judgment the court did not make any pronouncement on this point either. The appellee admitted that taking as a basis an annual yield of 6 percent, the income would be $8.78 less a month than the life annuity; however, he made it clear that that did not mean that the sum thus obtained was the income derived from

the properties, nor that that was the test to be used in determining the income. (See Answer to the Complaint and p. 9 of Defendant's Memorandum.)

"Appellants rely on the civil law principles relative to gifts in an effort to show that the transaction in question is not a gift. However, in the instant case the problem is one of tax law which must be decided in the light of the special law governing the matter. *Goenaga* v. *Sec. of the Treasury*, No. 287, opinion of October 16, 1962; *Semanaz* v. *Sec. of the Treasury*, 76 P.R.R. 385, 390 (1954); *Albanese* v. *Secretary of the Treasury*, 76 P.R.R. 302, 307 (1954); *González* v. *Secretary of the Treasury*, 75 P.R.R. 864, 869 (1954); *Wood* v. *Tax Court*, 71 P.R.R. 216, 218 (1950). And as has already been seen above, under the particular statute on the matter—Act No. 303 of April 12, 1946, as amended—the transaction executed between appellants and Fernando García Rodríguez constitutes a gift.

"    .    .    .    .    .    .    .    .

"Lastly, appellants allege that the limitation imposed by the lawmaker on relatives within certain degrees is contrary to the Constitution of the United States, to the Constitution of the Commonwealth of Puerto Rico, and to whatever is left of the Organic Act of Puerto Rico, 'since it establishes the conclusive presumption that the purpose of a transaction between relatives within certain degrees is to evade payment of a tax, thereby depriving them of the due process of law.'

"The courts have recognized the broad legislative power to establish reasonable classifications for the assessment of taxes, *P.R. Telephone* v. *Tax Ct.; Sec. of the Treas., Int.*, 81 P.R.R. 948, 971 (1960), and cases therein cited. In our opinion, the classification established by the provision of Act No. 303 assailed by appellants is not arbitrary, oppressive or capricious, and that the purpose sought thereby is to promote a permissible public aim.

"Furthermore, it is up to the one who attacks the classification contained in a law to show that it is without any reasonable basis and that it is purely arbitrary. *Miranda* v. *Sec. of the Treasury*, 77 P.R.R. 159, 166 (1954). And in the instant case appellants have not shown that the classification made in the Inheritance Tax Law is unreasonable and arbitrary."

In view of the foregoing, the judgment appealed from will be affirmed.